O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-03483 AHM<br>USBC Central District of California at Los Angeles<br>SV 02-11958-GM | Date | September 5, 2008 |
|---|---|---|---|
| Title | In re ELIZABETH HOWE | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:    Attorneys **NOT** Present for Defendants:

**Proceedings:**   IN CHAMBERS (No Proceedings Held)

## I.   INTRODUCTION

This case is on appeal from an Order of the Bankruptcy Court dated May 3, 2007. In that Order, the Bankruptcy Judge discharged Appellee Elizabeth Marie Howe's student loan debt in excess of $45,000. On appeal, Appellant Educational Credit Management Corporation ("ECMC") argues that the Bankruptcy Judge erred in failing to consider evidence of Howe's financial situation as of the date of the second of two bankruptcy trials and in finding that Howe satisfied the "undue hardship" standard for discharging debt. For the following reasons, the Court REVERSES the Bankruptcy Judge's May 3, 2007.

## II.   BACKGROUND

Given the lengthy factual and procedural history of this case already set forth in prior decisions cited below, this Court's recitation of the background of the case will be streamlined.

### A.   The Parties

From 1991 through 1995, Howe was enrolled in a master of fine arts program, concentrating on film production, at Loyola Marymount University. (May 3, 2007 Bankruptcy Court Opinion at 1.) She financed her graduate education with student loans.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-03483 AHM<br>USBC Central District of California at Los Angeles<br>SV 02-11958-GM | Date | September 5, 2008 |
|---|---|---|---|
| Title | In re ELIZABETH HOWE | | |

(*Id.*)  At the time of the first bankruptcy trial, the aggregate unpaid principal and interest due on the notes held by ECMC was approximately $81,019.22.  (*Id.* at 2.) ECMC is a private, non-profit corporation and a guaranty agency in the Federal Family Education Loan Program.

### B.    The First Bankruptcy Trial

After filing a Chapter 7 bankruptcy petition, Howe initiated an adversary proceeding to determine the dischargeability of her student loan debt.  (*Id.*)  At trial on January 15, 2004, the Bankruptcy Judge ruled that excepting the total debt from discharge would be an "undue hardship" and discharged all of Howe's student loan debt, except for $36,000, which she was ordered to pay, without interest, at the rate of $100 a month for thirty years.  (*Id.*)  The Bankruptcy Judge entered judgment on March 2, 2004 and ECMC appealed.  (*Id.*)

### C.    The BAP Appeal

On January 6, 2005, the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") reversed and remanded the Bankruptcy Judge's March 2, 2004 Judgment, holding that the Bankruptcy Judge applied an incorrect standard in determining whether Howe could maintain a minimal standard of living if forced to repay her student loans.  The BAP concluded that: "[T]he bankruptcy court applied an incorrect standard in considering the first prong of the undue hardship analysis, because it erred in its application of the IRS Standards and in simply adopting the IRS Standards instead of conducting an individualized analysis into whether debtor's actual expenses are necessary to the maintenance of a minimal standard of living." *In re Howe*, 319 B.R. 886, 894 (9th Cir. BAP 2005).  The BAP stated that because the "second and third prongs of the undue hardship test presuppose that a debtor has satisfied the first prong," the bankruptcy court "will need to reevaluate whether the requirements of the second and third prongs are satisfied if, after applying the correct standard, it determines that debtor cannot maintain a minimal standard of living if forced to repay her student loans." *Id.* at 889.[1]

---

[1]  The three "prongs" of this test are set forth *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-03483 AHM<br>USBC Central District of California at Los Angeles<br>SV 02-11958-GM | Date | September 5, 2008 |
|---|---|---|---|
| Title | In re ELIZABETH HOWE | | |

### D. The Second Bankruptcy Trial

Following remand, the Bankruptcy Judge held a second bankruptcy trial on January 18, 2007. On May 3, 2007, the Bankruptcy Judge issued a detailed 26-page decision that conducted the "individualized analysis of [Howe's] expenses" that the BAP had instructed. The Bankruptcy Judge heard evidence about Howe's current financial and medical situation and her future prospects. The Bankruptcy Judge stated that although "Howe's circumstances have changed for the better, my sense of equity to both sides tells me that Ms. Howe should not be placed in a position that is different from other chapter 7 debtors who timely challenge the requirements of full repayment of their student loans." (Appellant Ex. 39 at 666.) Thus, the Bankruptcy Judge limited her "decision to the facts and knowledge available at the time of the first trial (January 2004) rather than those that occurred thereafter, coming into being before the second trial (January 2007)." (*Id.*) Based on this information, the Bankruptcy Judge ruled that Howe satisfied all three prongs of the *Brunner* test as to a portion of the student loan balance and discharged the portion of Howe's student loan debt in excess of $45,000, rather than in excess of $36,000, which was the result in the first trial. (*Id.*)

### E. This Appeal

On appeal, ECMC now contends that the Bankruptcy Judge erred in failing to consider evidence of Howe's financial situation as of the date of the second bankruptcy trial. On May 30, 2008, this Court issued a minute order directing the parties to execute a stipulation jointly requesting the BAP to clarify whether upon remand the Bankruptcy Judge should have applied the "undue hardship" test to the facts as of the first bankruptcy trial or to the facts leading up to and as of the second bankruptcy trial. On June 11, 2008, Appellant ECMC responded to the minute order stating that there is no appellate procedure for the BAP to clarify its previous decision and that the BAP would not have jurisdiction to entertain such a stipulation from the parties. ECMC urged this Court to rule on its appeal without clarification from the BAP.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-03483 AHM<br>USBC Central District of California at Los Angeles<br>SV 02-11958-GM | Date | September 5, 2008 |
|---|---|---|---|
| Title | In re ELIZABETH HOWE | | |

## III. DISCUSSION

### A. Legal Standard

As stated in *In re Rifino*, 245 F.3d 1083 (9th Cir. 2001),

> To determine if excepting student loans from discharge will create an undue hardship on a debtor, the Ninth Circuit has adopted the three-part test established by the Second Circuit in *Brunner*. To obtain a discharge of a student loan obligation, the debtor must prove: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

245 F.3d at 1087 (citations omitted).

"Under this test, the burden of proving undue hardship is on the debtor, and the debtor must prove all three elements before discharge can be granted. If the debtor fails to satisfy any one of these requirements, the bankruptcy court's inquiry must end there, with a finding of no dischargeability." *Id.* at 1087-88 (internal citations and quotations omitted).

A decision that student loans impose an undue burden is a legal question to be reviewed *de novo*, but the factual findings underlying that decision are reviewed for clear error. *Id.* at 1086-87.

### B. The First Prong of *Brunner*: Minimal Standard of Living Based on Current Income and Expenses

In its January 6, 2005 Opinion, the BAP noted that "[a]pplication of the first prong of the undue hardship test requires an examination of a debtor's current finances" and that the "meaning of a 'minimal standard of living' must be determined 'in light of the

Case 2:07-cv-03483-AHM   Document 30   Filed 09/05/08   Page 5 of 8   Page ID #:66

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-03483 AHM<br>USBC Central District of California at Los Angeles<br>SV 02-11958-GM | Date | September 5, 2008 |
|---|---|---|---|
| Title | In re ELIZABETH HOWE | | |

particular facts of each case.'" *In re Howe*, 319 B.R. at 890 (citations omitted). "Current" refers to the time of the dischargeability trial. *See In re Wallace*, 259 B.R. 170, 180 (C.D. Cal. 2000); *In re Williams*, 301 B.R. 62, 72 (Bankr. N.D. Cal. 2003). However, in remanding the case to the Bankruptcy Judge, the BAP did not identify whether the "undue hardship" test applies to the facts as of the first trial held on January 15, 2004 or to the facts leading up to and as of the second trial held on January 18, 2007.

Following remand and the second trial, the Bankruptcy Judge expressed uncertainty in her May 3, 2007 Order as to the time frame to which the test should apply. *See, e.g.*, Appellant Ex. 39 at 653:7-9 ("Though it is clear from the remand order that I am to reevaluate the evidence of expenses presented at the initial trial in light of a different standard than was used, there is no directive to take new evidence of income in making this determination."); *id.* at 656:16-20 ("However, I cannot totally ignore the events which have occurred since the first trial. This has been the most difficult part of the decision . . . as I struggled with the issue of how (or if) I should use the post-January 2004 information in order to anticipate the future."); *id.* at 662:9-18 ("The problem here is not what I found for 'current' income and expenses under the first *Brunner* prong, but the specifics of events that happened after the initial trial, which I could not anticipate at that time. I deem the dischargeability trial to have taken place in January 2004, in part due to the equities required which, but for my erroneous interpretation of the law, would have ended at that time."); *id.* at 662:19-21 ("Beyond that, when looking to whether Ms. Howe's situation as it existed in 2003 would be likely to continue for a substantial length of time, I am and was aware of the continuing uncertainty of the film industry . . . ."); *id.* at 666:12-15 ("Thus, I should limit my decision to the facts and knowledge available at the time of the first trial (January 2004) rather than those that occurred thereafter, coming into being before the second trial (January 2007).").

Neither the Bankruptcy Code nor relevant case law sheds light on this specific question and the parties have not cited any helpful authority. The Bankruptcy Judge limited her decision to the facts available at the time of the first trial, relying on the court's inherent discretion to accept and weigh evidence and on the plain instructions of the BAP's decision. (*See id.* at 653.) She noted that the "BAP did not instruct me to consider new factual evidence, but made it clear that all that was required was to use a proper methodology by applying a correct standard to the factual findings that I had

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-03483 AHM<br>USBC Central District of California at Los Angeles<br>SV 02-11958-GM | Date | September 5, 2008 |
|---|---|---|---|
| Title | In re ELIZABETH HOWE | | |

made." (*Id.*)  Finally, the Bankruptcy Judge concluded that the relevant dischargeability trial was the first trial based "in part" on the court's "sense of equity." (*See id.* at 662:14; 666:10.)  However, the Bankruptcy Judge noted that "if [the court is] again misinterpreting the law, using the post-January 2004 information and projections would require [the court] to grant judgment to the defendant and deny discharge of any part of this loan." (*Id.* at 663:8-11.)  Because the "case has dragged on for too long" and rather than invite another remand and further proceedings, the Bankruptcy Judge emphasized that if she was to consider evidence of events that occurred after the first trial she would find that Howe "can repay her full student loan through one of the Ford [loan repayment] plans, so no discharge is warranted." (*Id.* at 666:25-26.)

   This Court must assess whether the Judge's second application of the "undue hardship" test was legally correct despite the absence of authoritative appellate guidance as to the applicable time frame.  Having reviewed the record, the parties' briefs and the applicable authorities, this Court finds that "current" within the meaning of the first prong of the *Brunner* test requires an examination of the full picture of a debtor's finances and standard of living at the time of the second bankruptcy trial.  Thus, the Bankruptcy Judge erred in not considering what happened after the first trial.

   First, although the BAP did not require the Bankruptcy Judge to receive more evidence on remand, it also did not prohibit it from doing so.  A "mandate is controlling as to all matters within its compass, but leaves the district court any issue not expressly or impliedly disposed of on appeal." *Mirchandani v. United States*, 836 F.2d 1223, 1226 (9th Cir. 1988).

   In fact, at a status conference before the second trial, the Bankruptcy Judge ordered (over ECMC's objection) that the parties submit the updated evidence:

> . . . I need more evidence on the Debtor's medical condition and what has happened to her employment since the original trial, which was over a year ago . . . . [U]sing the second prong of *Brunner* requires an attempt to look into the future.  So all evidence that helps me on that, as to her job and income prospects, will be relevant.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-03483 AHM<br>USBC Central District of California at Los Angeles<br>SV 02-11958-GM | Date | September 5, 2008 |
|---|---|---|---|
| Title | In re ELIZABETH HOWE | | |

(Appellant Ex. 29 at 331:6-12.) The Bankruptcy Court should not have ignored this relevant information. Had the tables been turned and evidence showed that the debtor's financial situation had worsened, such evidence would be relevant to determining whether she could maintain a minimal standard of living if forced to repay the loans.

     Second, information about the debtor's finances at the time of the second dischargeability trial not only is relevant but essential to determining whether the debtor can maintain "a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *In re Rifino*, 245 F.3d at 1087. The debtor incurred a debt. Whether she is legally required to repay it depends on whether she can do so, and that, in turn, requires an evaluation of her financial status at the time the payments are about to start. If she can, the overall scheme for applying dischargeability principles suggests that it would be unfair to excuse her from doing so. That is why considering such information is consistent with the general objectives of the *Brunner* test. *See, e.g.*, *In re Wallace*, 259 B.R. 170, 181 (C.D. Cal. 2000) (Morrow, J.) ("Requiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, more reliably guarantees that the hardship presented is 'undue.'") (*citing Brunner*, 831 F.2d at 396).

     One can understand why the Bankruptcy Judge's "sense of equity" was sympathetic to the status of a "forty-two year old divorced woman with no children." But undisputed evidence showed that Howe's income substantially increased from $55,455 in 2003 (the first trial was held in January 2004) to $82,560 in 2006 (the second trial was held in January 2007). As such, equity disfavors discharging the lawful debt that she could reasonably afford to repay. *See In re Nys*, 446 F.3d 938, 944 (9th Cir. 2006) ("Therefore, Congress sought to prohibit a 'garden-variety debtor' from discharging student loans, especially when that 'garden-variety debtor' will presumably use her loan-funded education to substantially increase her income in the near future. . . What separates a 'garden-variety debtor' from a debtor who can show 'undue hardship' is the realistic possibility that a 'garden-variety debtor' could improve her financial situation in the future. With increased financial stability, a debtor can make payments on her student loans and maintain a minimal standard of living. In comparison, forcing debtors who cannot reasonably be expected to increase their future income to make payments on their student loans when it causes them to fall below a minimal standard of living constitutes

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-03483 AHM<br>USBC Central District of California at Los Angeles<br>SV 02-11958-GM | Date | September 5, 2008 |
|---|---|---|---|
| Title | In re ELIZABETH HOWE | | |

an 'undue hardship.'") (internal citations omitted).

The Bankruptcy Judge concluded that if the complete record available at the second bankruptcy trial, including the post-January 2004 information, were considered, Howe could make payments on her student loans and maintain a minimal standard of living. The Bankruptcy Judge stated that "using the post-January 2004 information and projections would require [the court] to grant judgment to the defendant and deny discharge of any part of this loan." (Appellant Ex. 39 at 663:8-11.) In other words, Howe could not have met her burden under the undue hardship test. The Bankruptcy Judge's detailed factual findings are well-supported and not clearly erroneous. Thus, the Court finds that the Bankruptcy Judge erred in not considering post-January 2004 evidence and adopts the Bankruptcy Judge's alternative conclusion that, if that evidence is considered, no discharge of debt is warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court REVERSES the Bankruptcy Judge's May 3, 2007 Order and REMANDS this action to the Bankruptcy Court, which should enter a judgment consistent with this Order and the factual findings in the Bankruptcy Court's May 3, 2007 Order. No hearing is necessary. Fed. R. Civ. P. 78(b); L.R. 7-15.

THIS ORDER IS NOT INTENDED FOR PUBLICATION.

_____ : _____

Initials of Preparer      SMO

**Make JS-6**